UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ZoANN C. THOMPSON, INDIVIDUALLY
AND O/B/O MINOR CHILD D.K.

              Plaintiff,

       -against-

DMN MANAGEMENT SERVICES, LLC,
D/B/A CAPITAL LIVING AND REHABILITATION
CENTRES; ; MINOA NURSING
AND REHABILITATION CENTRE, LLC
D/B/A THE CROSSINGS NURSING AND
REHABILITATION CENTRE,

              Defendant.

**COMPLAINT**

Civil Action No. 5:16-cv-667(GTS/ATB)

JURY TRIAL DEMANDED

---

      Plaintiffs ZoAnn C. Thompson (hereinafter "Thompson"), individually and on behalf of her minor child with the initials "D.K." (hereinafter "DK"), by and through his undersigned counsel Tully Rinckey PLLC, as and for his Complaint against the Defendant The Crossings Nursing and Rehabilitation Center (hereinafter "The Crossings") sets forth the following:

JURISDICTION AND VENUE

1.     This is an action for damages under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, et seq. (hereinafter "Title VII") as well as the provisions of the Human Rights Law of New York State, as amended, New York Executive Law §§ 290, et seq. (hereinafter "NYSHRL") and is therefore within this Court's jurisdiction in accordance with 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 2000e-5.

2.    By Final Order dated March 21, 2016, the New York State Division of Human Rights dismissed Case No. 10174228 for administrative convenience by and through ratification of a previous order dated February 18, 2016 wherein Administrative Law Judge Edward Luban ordered that the above captioned matter be dismissed for administrative convenience and permitted that the Plaintiffs herein may have their claims litigated in Federal Court.

3.    This Court maintains supplemental jurisdictions over the claims under state law set forth herein pursuant to 28 U.S.C. §1367 under the rationale that the United States District Court is sitting in original jurisdiction in the present matter and the state law claims as alleged are directly related to those which this Court maintains original jurisdiction over, forming a common nucleus of operative facts therewith.

4.    Venue in this district is proper pursuant to 28 U.S.C §1391(b).

## PARTIES

5.    DK is a half African American male who is under eighteen (18) years of age and resides in the County of Onondaga, State of New York.

6.    Thompson is a Caucasian female who is over the age of eighteen (18) years of age and resides in the County of Onondaga, State of New York.  Thompson is a Certified Nurse's Assistant.

7.    Defendant is a multi-state group of elderly care facilities with locations throughout the northeastern United States, and is owned and operated by numerous individuals who include, but may not be limited to, Jami Durante, Anthony Durante, Lisa Marrello, Patrick Martone, Mark Nichols, Pamela Nichols, and Jodi Durante.

8.      The Crossings is a Domestic Corporation which is duly organized and exists under the laws of the State of New York. Crossings headquarters are in the County of Onondaga, State of New York.

<u>FACTS</u>

9.      Defendant The Crossings is in the business of nursing and rehabilitation services. The Crossings provides both long term care and short term rehabilitation services. Such services are provided in a full time capacity to over eighty (80) individuals. According to The Crossings website their amenities include:

> "a professional caring staff; licensed registered nurses 24 hours a day; comprehensive rehabilitation services by qualified therapists available 7 days a week, an outstanding activity program, trips, beauty/barber shop, The Crossings Café; specially prepared home cooked meals, spacious rooms with a window view from ceiling to floor, new friends and much more."

Part and parcel to these services is the food and beverage needs of the patients under Defendant's care; and as such Defendant maintains a full time kitchen staff to meet these needs accordingly. The Crossings also maintains a nursing staff twenty-four (24) hours a day and seven (7) days a week.

10.     Upon information and belief The Crossings has over 500 employees and generates yearly revenue of over $2,500,000.

11.     Owners and operators of the Crossings and parent corporation DMN Management Services ("DMN") Jami Durante, Anthony Durante, Lisa Marrello, Patrick Martone, Mark Nichols, Pamela Nichols, and Jodi Durante (collectively hereinafter "Owners") operate thirteen (13) or more nursing and rehabilitation centers throughout the Northeast.

12. Owner Patrick Martone serves as Chief Operating Officer for many of DMN's nursing homes. Upon information and belief, Martone was given control of Hallmark Nursing Centre Inc. (hereinafter "Hallmark"), a business entity operating in New York which had a substantially similar business model and practice to DMN. Hallmark controlled eight nursing homes within New York State.

13. Upon information and belief, Patrick Martone was given control of Hallmark after James Durante and Joseph Nichols made an agreement with the New York State Attorney General that required them to forfeit their nursing home administrator's licenses and agree to never again own, operate, or manage a nursing home in New York. DMN was born from the ashes of this former nursing home empire on September 26, 2003, less than three months after Hallmark plead guilty to Falsifying Business Records 1st degree and Willful Violation of the Public Health Laws on or about June 30, 2003.

14. Upon information and belief, Martone assumed control of Hallmark subsequent to a barring order preventing Joseph Nichols and James Durante from operating any nursing homes within the State of New York. Notwithstanding the above, upon information and belief, Joseph Nichols and James Durante continue to control DMN and its subsidiary nursing homes in violation of their agreement with the New York State Attorney General.

15. Upon information and belief, the charge against Hallmark were levied due to the business practices of Nichols and Durante which resulted in injuries to the employee's and residents of the nursing homes owned by the aforesaid individuals. Upon information and belief, these injuries included the death of a resident.

16. Upon information and belief, DMN Management Services owns and operates many or all of the same nursing homes as Hallmark, and is itself owned by individuals who share a

surname with James Durante and Joseph Nichols, who after pleading to the previously noted felony, are prohibited from owning or operating a nursing home in New York State.

17.   Upon information and belief, DMN Management Services shares owners, operators, and business practices with the now defunct Hallmark.

18.   At all relevant times herein, The Crossings engaged in a business which affected interstate commerce and maintained at least twenty (20) or more employees each working day for in excess of twenty (20) or more calendar weeks in the present or previous calendar year.

19.   At all relevant times herein, The Crossings has had an annual gross volume of sales or business conducted which is not less than $500,000.

20.   DK was employed by Crossings at all relevant times herein, and had been employed by the Defendant since on or about September of 2014 as a member of the kitchen staff when he was no more than sixteen (16) years of age until he was constructively terminated from his position on or about February 1, 2015.

21.   Thompson was employed by The Crossings at all relevant times herein, and had been employed by Defendant since on or about November of 2010 as a Certified Nursing Assistant until she was constructively terminated her position in February of 2015 due to a fear of retaliation for notifying her employer about the discriminatory practices and sexual harassment taking place against DK.

22.   Upon information and belief, at no point during his employment with The Crossings was DK subject to a disciplinary action of any sort.

5

23.   Upon information and belief, at no point during her employment with The Crossings was Thompson subject to a disciplinary action of any sort.

24.   Upon information and belief, at no point during his employment with The Crossings did DK receive any training regarding company policies including but not limited to training regarding how to file a complaint with the relevant authorities alleging harassment and discrimination.

25.   Thompson first learned of the discrimination and harassment against DK, her son, through statements made to her by Howe in or about November of 2014. When she learned of the discrimination and harassment taking place at her place of employment, Thompson told Howe that the behavior in question must cease and was inappropriate. After November 2014, Thompson was approached by other employees at The Crossing regarding the sexual harassment that DK was enduring.

26.   On or about November 2014 Howe commented to Thompson that "a few of the staff are commenting on Dustin and if he were older, they wanted to be his wife."  Thompson notified Howe that this type of talk about her son was sexually inappropriate and made her uncomfortable.

27.   Upon information and belief, DK was subjected to an unwanted and unsolicited sexually charged environment at work based upon his sex and sex stereotypes by and through numerous other comments and conversations which took place during the course of his employment.

28.   On or about December 2014, a female employee of The Crossings, Adabria Graves ("Graves") made a sexually charged comment to DK regarding a bulge in his pants while both parties were in the presence of management official Katie Procopio (hereinafter

"Procopio").  Upon information and belief, at the time of the incident Procopio was acting as a shift supervisor/team leader in the kitchen of The Crossings.

29.    In or about December 2014, Procopio reported the above noted instance of sexual harassment to her direct supervisor, Lisa Howe (hereinafter "Howe").

30.    In or about December 2014, without being solicited to do so, Procopio showed DK sexually suggestive and lewd pictures of herself wherein she was wearing nothing but underwear.  Upon information and belief, at the time of the incident Procopio was acting as a shift supervisor/team leader in the kitchen of The Crossings.

31.    In or about December 2014 and January 2015, Procopio was present when lewd statements were made to DK, a minor, regarding sex acts another female employee engaged in.  Upon information and belief, at the time of the incident Procopio was acting as a shift supervisor/team leader in the kitchen of The Crossings.

32.    On or about December 2014, an adult female employee, Graves, told DK that she desired to be his "first black woman", alluding that she wanted to engage in sexual intercourse with DK.

33.    On or about December 2014, while at work Procopio invited DK, a minor, to a party for her birthday where alcohol would be served.  Upon information and belief, at the time of the incident Procopio was acting as a shift supervisor/team leader in the kitchen of The Crossings.

34.    Upon information and belief, the workplace environment that DK was forced to labor in was ripe with racially charged rhetoric, including, but not limited to, gratuitous use of ethnic slurs inclusive of the words "nigger" and/or "nigga".  The hip-hop song "Hot

Nigga" by Bobby Shmurda was allowed to play in the kitchen for quite some time before Howe finally requested it be stopped.

35.     Upon information and belief, on multiple occasions in December 2014 and January 2015, Procopio expressed her discriminatory views against individuals of African-American ancestry to DK by making statements that indicated that she felt a segment of the black population was not equal to Caucasian individuals.

36.     Upon information and belief, on multiple occasions the word "nigger" was used in reference to Adabria Graves and an additional employee named Teara in DK's presence.

37.     Upon information and belief, on or about January 2015, Procopio stated to DK "see 'D' I told you that I would have Adabria fired before Christmas, just as I had Teara's black ass fired."

38.     Upon information and belief, on or about January 2015, Procopio stated to DK "there are two types of black people, there's you and then there's Adabria and Teara."

39.     Upon information and belief, on or about February 1, 2015, Procopio, a management official, called DK ignorant, stated that she knows that he was taught to read, and to "stop using the other half of himself", referring to his status as a biracial male of African American decent.  Upon information and belief, at the time of the incident Procopio was acting as a shift supervisor/team leader in the kitchen of The Crossings.

40.     Upon information and belief, on or about February 1, 2015, DK reported the above noted incident with Procopio to Howe and resigned his position due to the fact that he felt a pervasive and abusive atmosphere of harassment and discrimination at the workplace that materially altered the conditions of his employment.

41.   Upon information and belief, The Crossings management officials were on notice of the harassment DK was subjected to through the complaints of Thompson and Procopio to Howe, The Crossings Food Service Director. Thompson notified Howe of the discrimination and sexual harassment incidents on numerous occasions, as she was considered to be a family friend and she communicated with Howe regularly.  Even though Howe was a family friend, Thompson approached Howe at The Crossings and made it clear that she was addressing Howe in her role as The Crossings Food Service Director, and not as that of a family friend.

42.   Upon information and belief, Procopio notified Howe of some of the instances of sexual harassment against DK when they were being committed by an employee with whom Procopio had disagreements. However, when harassment or discrimination was inflicted on DK by Procopio or an employee that she was fond of, Procopio failed to notify Howe of any such instances.

43.   When DK notified Howe of the racial discrimination incidents by Procopio he was told that the motto of the kitchen is *"what happens in the kitchen stays in the kitchen.*"

44.   Upon information and belief, either no action, inadequate action, or both was taken by The Crossings management officials after notice was given of the discrimination and harassment which was taking place against DK.

45.   Procopio and Howe were both management officials with Crossings and took part in and/or were cognizant of the aforesaid harassment and discrimination against DK.

46.   On or about March 24, 2015, DK filed a complaint with the New York State Division of Human Rights alleging unlawful discrimination based upon his race (black), age (minor), and sex (male).

## FIRST CAUSE OF ACTION

*Sexual Harassment against DK under Title VII due to his sex and sex stereotypes*

47.   DK repeats and realleges by reference paragraphs 1 through 37 as though fully set forth herein.

48.   The Crossings subjected DK to a pattern and practice of sexual harassment in violation of Title VII due to his sex and sex stereotypes, and further failed to take adequate steps to remediate this sexual harassment which permeated their workplace.

49.   DK is a member of a protected class as a male, was subjected to unwanted and unsolicited sexual harassment based upon his sex and sex stereotypes, and this harassment constituted an adverse employment action as it materially altered a condition of DK's employment.

50.   Under the above alleged facts, The Crossings had notice of this sexual harassment and failed to take prompt and adequate remedial action to rectify it.

51.   DK suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, educational benefits and other incidental expenses both directly and proximately as a result of The Crossing's sexual harassment.

52.   Due to The Crossing's sexual harassment in violation of Title VII, DK has suffered the aforesaid damages in an amount to be determined at the time of trial.

## SECOND CAUSE OF ACTION
*Discrimination against DK due to his sex or sex stereotype*

53.   DK repeats and realleges by reference paragraphs 1 through 43 as though fully set forth herein.

54.     The Crossings engaged in a pattern and practice of discrimination against DK due to his sex and sex stereotypes in violation of Title VII, had notice of such discrimination, and failed to take prompt and adequate remedial action to rectify the discrimination in question.

55.     DK is the member of a protected class based on his sex and was qualified for the position which he held.

56.     Under the facts and allegations herein, DK was subject to the adverse employment actions of sexual harassment, hostile work environment, retaliation, and constructive discharge.

57.     A causal nexus exists between the adverse employment actions set forth in this Complaint and DK's sex or sex stereotypes and the facts herein support the notion that these adverse employment actions were motivated by DK's sex or sex stereotypes.

58.     DK suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, educational opportunities and other incidental expenses both directly and proximately as a result of The Crossing's intentional discrimination.

59.     Due to The Crossing's sexual discrimination of DK based on his sex or sex stereotypes in violation of Title VII, DK has suffered the aforesaid damages in an amount to be determined at the time of trial.

### THIRD CAUSE OF ACTION
*DK was victim of a hostile work environment due to his sex*

60.     DK repeats and realleges by reference paragraphs 1 through 50 as though fully set forth herein.

61.     The Crossings created a hostile work environment against DK due to his sex and sex stereotypes in violation of Title VII, and failed to take prompt and adequate remedial action to rectify it.

62.     Based on the facts articulated above, the behavior to which DK was subjected to by The Crossings due to his sex or sex stereotypes was so severe and pervasive that it altered the conditions of his employment and created an abusive working environment, which is an adverse employment action.

63.     DK suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, educational benefits, and other incidental expenses both directly and proximately as a result of the hostile work environment created by The Crossings due to his sex or sex stereotypes.

64.     Due to the hostile work environment created by The Crossings in violation of Title VII, DK has suffered the aforesaid damages in an amount to be determined at the time of trial.

FOURTH CAUSE OF ACTION
*DK was subjected to a hostile work environment due to his race*

65.     DK repeats and realleges by reference paragraphs 1 through 56 as though fully set forth herein.

66.     The Crossings created a hostile work environment against DK due to his race in violation of Title VII, and failed to take prompt and adequate remedial action to rectify it.

67.     Based on the facts articulated above, the behavior to which DK was subjected to by The Crossings due to his race was so severe and pervasive that it altered the conditions of his employment and created an abusive working environment, constituting an adverse employment action.

68.     DK suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, educational opportunities, and other incidental expenses both directly and proximately as a result of the hostile work environment created by The Crossings due to his race.

69.     Due to the hostile work environment created by The Crossings in violation of Title VII, DK has suffered the aforesaid damages in an amount to be determined at the time of trial.

## FIFTH CAUSE OF ACTION
*DK was subject to discrimination based on his race in violation of Title VII*

70.     DK repeats and realleges by reference paragraphs 1 through 60 as though fully set forth herein.

71.     The Crossings discriminated against DK due to his race in violation of Title VII, and failed to take prompt and adequate remedial action to rectify it.

72.     As a biracial individual of African American decent, DK is a member of a protected class and he was qualified for the position which he held with The Crossings.

73.     Under the facts and causes of action alleged herein, DK was subject to adverse employment actions due to his race which included, but were not limited to, constructive discharge, hostile work environment, and retaliation.

74.     Each and all of the adverse employment actions taken by The Crossings had an underlying motivation based upon DK's race in violation of Title VII.

75.     A causal nexus exists between the adverse employment actions set forth in this Complaint and DK's race, and the facts herein support the notion relating the same.

76.     DK suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits,

educational benefits, and other incidental expenses both directly and proximately as a result of The Crossing's discrimination based upon his race.

77.    Due to The Crossing's discrimination based upon race in violation of Title VII, DK has suffered the aforesaid damages in an amount to be determined at the time of trial.

SIXTH CAUSE OF ACTION
*DK was subjected to constructive discharge by Crossings*

78.    DK repeats and realleges by reference paragraphs 1 through 68 as though fully set forth herein.

79.    The Crossings subjected DK to constructive discharge due to his race, sex, and sex stereotypes in violation of Title VII.

80.    The Crossings compelled DK's resignation by and though their creation of adverse conditions so severe that they went above and beyond a hostile work environment due to DK's race, sex, and sex stereotype. The working conditions created by The Crossings due to DK's protected status were so intolerable that a reasonable person would have no choice but to tender his resignation.

81.    DK suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses both directly and proximately as a result of The Crossing's constructive discharge.

82.    Due to The Crossing's constructive discharge in violation of Title VII, DK has suffered the aforesaid damages in an amount to be determined at the time of trial.

SEVENTH CAUSE OF ACTION
*DK was the victim of retaliation due to his protected activity under Title VII*

83.     DK repeats and realleges by reference paragraphs 1 through 73 as though fully set forth herein.

84.     The Crossings retaliated against DK due to his protected activities under Title VII in violation of the same, and failed to take prompt and adequate remedial action to rectify the ongoing pattern and practice of retaliation.

85.     By informing The Crossings management official, Howe, of the impermissible sexual harassment and racial discrimination being levied against him in the workplace, DK was engaging in protected activity under Title VII.

86.     In subjecting him to further harassment, discrimination, and constructive discharge due to his disclosure of workplace violations of Title VII, The Crossings committed adverse employment actions against DK.

87.     A causal connection exists between the aforesaid adverse employment actions and the disclosures made by DK.

<u>EIGHTH CAUSE OF ACTION</u>
*Discrimination against DK under NYSHRL*

88.     DK repeats and realleges by reference paragraphs 1 through 78 as though fully set forth herein.

89.     The Crossings discriminated against DK due to his race in violation of the NYSHRL, and failed to take prompt and adequate remedial action to rectify this discrimination.

90.     Management officials were notified of this ongoing pattern and practice of discrimination against DK based on his race; however they took no steps to end the unlawful employment discrimination in question.

91.     DK was the victim of a hostile work environment due to his race while under employment with The Crossings. The environment which was created by The Crossings

was so abusive, severe, and pervasive that it altered the conditions of his employment, constituting an adverse employment action.

92.     Due to his race, DK suffered disparate treatment by The Crossings and was treated differently than those who were similarly situated.

93.     Under the aforesaid facts and causes of action herein alleged, DK was subject to adverse employment actions which included constructive discharge based upon the hostile work environment created by The Crossings due to DK's race, as well as retaliation.

94.     A causal nexus exists between the adverse employment actions set forth in this Complaint and DK's race, and the facts herein support the notion that these adverse employment actions were motivated by DK's race.

95.     DK suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, educational opportunities and other incidental expenses both directly and proximately as a result of The Crossing's discrimination.

96.     Due to The Crossing's discrimination in violation of the NYSHRL, DK has suffered the aforesaid damages in an amount to be determined at the time of trial.

NINTH CAUSE OF ACTION
*Retaliation against DK under NYSHRL*

97.     DK repeats and realleges by reference paragraphs 1 through 87 as though fully set forth herein.

98.     The Crossings engaged in unlawful retaliation under the provisions of the NYSHRL when they deliberately failed to take any action to address the discrimination based on race and sex, or sex stereotypes which was taking place at their place of business.

99.    DK notified The Crossings of the aforesaid pattern and practice of discrimination based on race, sex, or sex stereotypes, and sexual harassment, in good faith, thereby engaging in protected activity under the NYSHRL.

100.    Upon information and belief DK's protected activity of exposing the above discrimination and sexual harassment taking place at his workplace was the cause of adverse employment action taken against him.

101.    Under the aforesaid facts and causes of action herein alleged, DK was subject to adverse employment actions which included constructive discharge based upon the hostile work environment created by The Crossings due to DK's race as well as retaliation.

102.    The Crossings possessed no legitimate reason to commit the adverse employment actions in question against DK, and any reason given by them is pretextual.

103.    The averse employment actions in questions were of the type that would prevent a reasonable worker from coming forward with a charge of discrimination and constituted working condition changes which amounted to more than a mere inconvenience or change in responsibilities.

104.    DK suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses both directly and proximately as a result of The Crossing's retaliation.

105.    Due to Crossing's retaliation in violation of the NYSHRL, DK has suffered the aforesaid damages in an amount to be determined at the time of trial.

TENTH CAUSE OF ACTION
*Hostile environment and sexual harassment in violation of NYSHRL*

106.   DK repeats and realleges by reference paragraphs 1 through 96 as though fully set forth herein.

107.   DK is a member of a protected class as a male, was subjected to unwanted and unsolicited instances of harassment based upon his sex and sex stereotypes, and this harassment constituted an adverse employment action as it materially altered a condition of DK's employment.

108.   The Crossings subjected DK to a pattern and practice of sexual harassment in violation of the NYSHRL due to his sex and sex stereotypes, and further failed to take adequate steps to remediate this sexual harassment which permeated their workplace.

109.   Under the above alleged facts, The Crossings had notice of this sexual harassment and failed to take prompt and adequate remedial action to rectify the same.

110.   DK suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, educational benefits and other incidental expenses both directly and proximately as a result of The Crossing's sexual harassment.

111.   Due to The Crossing's retaliation in violation of the NYSHRL, DK has suffered the aforesaid damages in an amount to be determined at the time of trial.

ELEVENTH CAUSE OF ACTION
*Aiding and abetting discriminatory practices in violation of the NYSHRL*

112.   DK repeats and realleges by reference paragraphs 1 through 102 as though fully set forth herein.

113.    Under the aforesaid facts and causes of action herein alleged, DK was the victim of discrimination, sexual harassment, a hostile work environment, and retaliation in violation of the NYSHRL.

114.    Under the facts and causes of action herein alleged, DK was the victim of all aforesaid violations of the NYSHRL at the hands of his supervisors and co-employees alike.

115.    The Crossings knew or should have known that these violations of the NYSHRL were taking place. Co-employees and supervisors knew or should have known of these ongoing violations of the NYSHRL.

116.    The Crossings aided and abetted the discriminatory actions of DK's co-employees and supervisors.

117.    DK's co-employees and supervisors aided and abetted the discriminatory actions of The Crossings.

118.    DK suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, educational benefits and other incidental expenses both directly and proximately as a result of The Crossings and their respective employees and supervisors aiding and abetting of NYSHRL violations.

119.    Due to The Crossing's and their respective employee's and supervisor's aiding and abetting of NYSHRL violations, DK has suffered the aforesaid damages in an amount to be determined at the time of trial.

TWELFTH CAUSE OF ACTION
*Discrimination against Thompson under Title VII due to race*

120.    Thompson repeats and realleges by reference paragraphs 1 through 110 as though fully set forth herein

19

121.  The Crossings discriminated against Thompson due to her race in violation of Title VII, and failed to take prompt and adequate remedial action to rectify the existence of this pervasive pattern and practice of discrimination, harassment, retaliation, and hostile work environment that was present at their place of business.

122.  Thompson notified The Crossings on numerous occasions of the discrimination, harassment, retaliation, and hostile work environment that was present at their place of business and The Crossing's failure to take action to rectify the same was due to Thompson's race.

123.  Thompson was subject to disparate treatment by The Crossings when they failed to treat her in a manner in which they would treat similarly situated employees due to her race when they refused to act on her complaints of harassment and discrimination against her minor child DK.

124.  Based on the facts articulated herein, the pattern and practice of discrimination against Thompson in violation of Title VII was so severe that it altered the terms and conditions of her employment and created a hostile working environment.

125.  Thompson suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses both directly and proximately as a result of the discrimination inflicted on her by Crossings due to his race.

126.  Due to The Crossing's discrimination in violation of Title VII, Thompson has suffered the aforesaid damages in an amount to be determined at the time of trial.

<u>THIRTEENTH CAUSE OF ACTION</u>
*Discrimination against Thompson based on sex in violation of Title VII*

127.    Thompson repeats and realleges by reference paragraphs 1 through 117 as though fully set forth herein.

128.    The Crossings created a hostile work environment against Thompson due to her sex or sex stereotypes in violation of Title VII, and failed to take prompt and adequate remedial action to rectify the existence of the pervasive pattern and practice of discrimination, harassment, retaliation, and hostile work environment that was present at their place of business.

129.    Thompson notified The Crossings on numerous occasions of the discrimination, harassment, retaliation, and hostile work environment that was present at their place of business and The Crossing's failure to take action to rectify the same was due to Thompson's sex or sex stereotypes.

130.    Thompson was subject to disparate treatment by The Crossings when they failed to treat her in a manner in which they would treat similarly situated employees due to her sex or sex stereotypes when they refused to act on her complaints of discrimination against her minor child DK.

131.    Based on the facts articulated herein, the pattern and practice of discrimination against Thompson in violation of Title VII was so severe that it altered the terms and conditions of her employment and created a hostile working environment.

132.    Thompson suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses both directly and proximately as a result of the discrimination inflicted on her by The Crossings due to her sex or sex stereotypes.

133.   Due to The Crossing's discrimination in violation of Title VII, Thompson has suffered the aforesaid damages in an amount to be determined at the time of trial.

## FOURTEENTH CAUSE OF ACTION
*Discrimination against Thompson due to race in violation of NYSHRL*

134.   Thompson repeats and realleges by reference paragraphs 1 through 124 as though fully set forth herein.

135.   The Crossings discriminated against Thompson due to her race in violation of the NYSHRL, and failed to take prompt and adequate remedial action to rectify it.

136.   Thompson was the victim of a hostile work environment due to her race while under employment with The Crossings. The environment which was created by The Crossings was so abusive, severe, and pervasive that it altered the conditions of her employment.

137.   Thompson suffered disparate treatment by The Crossings and was treated differently than those who were similarly situated due to her race.

138.   Under the aforesaid facts and causes of action herein alleged, DK was subject to adverse employment actions which included constructive discharge based upon the hostile work environment created by The Crossings due to Thompson's race as well as retaliation for her engagement in protected activity under the NYSHRL.

139.   A causal nexus exists between the adverse employment actions set forth in this Complaint against Thompson and Thompson's race, and the facts herein support the notion that these adverse employment actions were motivated by Thompson's race.

140.   Thompson suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses both directly and proximately as a result of The Crossing's discrimination.

Case 5:16-cv-00667-GTS-ATB   Document 1   Filed 06/13/16   Page 23 of 25


141.   Due to The Crossing's discrimination in violation of the NYSHRL, Thompson has suffered the aforesaid damages in an amount to be determined at the time of trial.

FIFTEENTH CAUSE OF ACTION
*Retaliation against Thompson under the NYSHRL*

142.   Thompson repeats and realleges by reference paragraphs 1 through 132 as though fully set forth herein.

143.   The Crossings engaged in unlawful retaliation under the provisions of the NYSHRL when they deliberately failed to take any action to address the discrimination based on race and sex or sex stereotypes which was taking place at their place of business.

144.   Thompson notified The Crossings of the aforesaid pattern and practice of discrimination based on race, sex or sex stereotypes, and sexual harassment in good faith, thereby engaging in protected activity under the NYSHRL.

145.   Upon information and belief, Thompson's protected activity of exposing the above alleged discrimination and sexual harassment taking place at her workplace was the genesis for the creation of a hostile work environment at The Crossings.

146.   Under the aforesaid facts and causes of action herein alleged, Thompson was subject to adverse employment actions which included constructive discharge and retaliation based upon the hostile work environment created by The Crossings due to Thompson's race, sex or sex stereotypes, and protected activity.

147.   The Crossings possessed no legitimate reason to commit the adverse employment actions in question against Thompson, and any reason given is pretextual.

148.   The averse employment actions in questions were of the type that would prevent a reasonable worker from coming forward with a charge of discrimination and constituted

working condition changes which amounted to more than a mere inconvenience or change in responsibilities.

149.     Thompson suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses both directly and proximately as a result of The Crossing's retaliation.

150.     Due to The Crossing's retaliation in violation of the NYSHRL, Thompson has suffered the aforesaid damages in an amount to be determined at the time of trial.

SIXTEENTH CAUSE OF ACTION
*Discrimination against Thompson due to sex under NYSHRL*

151.     Thompson repeats and realleges by reference paragraphs 1 through 141 as though fully set forth herein.

152.     The Crossings discriminated against Thompson due to her sex and sex stereotypes in violation of the NYSHRL, and failed to take prompt and adequate remedial action to rectify it.

153.     Thompson was the victim of a hostile work environment due to her sex and sex stereotypes while under employment with The Crossings. The environment which was created by The Crossings was so abusive, severe, and pervasive that it altered the conditions of her employment.

154.     Thompson suffered disparate treatment by The Crossings and was treated differently than those who were similarly situated due to her sex and sex stereotypes.

155.     Under the aforesaid facts and causes of action herein alleged, Thompson was subject to adverse employment actions which included constructive discharge based upon the hostile work environment created by The Crossings due to Thompson's sex and sex

stereotypes as well as retaliation for her engagement in protected activity under the NYSHRL.

156.   A causal nexus exists between the adverse employment actions set forth in this Complaint against Thompson and Thompson's sex and sex stereotypes, and the facts herein support the notion that these adverse employment actions were motivated by Thompson's sex and sex stereotypes.

157.   Thompson suffered and continues to suffer pain, suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses both directly and proximately as a result of The Crossing's discrimination.

158.   Due to The Crossing's discrimination in violation of the NYSHRL, Thompson has suffered the aforesaid damages in an amount to be determined at the time of trial.

WHEREFORE, based on the foregoing, Plaintiffs, DK and Thompson demand judgment against Defendant, The Crossings, as follows:

1. An award of compensatory damages together with appropriate interest, exemplary damages, expert witness fees, reasonable attorney's fees, and other litigation expenses;
2. An award of Plaintiffs' costs and disbursements; and
3. Such other and further relief as the Court may deem just and proper.

Dated: June 13, 2016
    Syracuse, New York

TULLY RINCKEY PLLC
*Attorneys for Plaintiffs*
By: _____ s/ Donald E. Kelly _____
    Donald E. Kelly, Esq., of counsel
    Bar Roll No. 508970
    507 Plum Street, Suite 103
    Syracuse, New York 13204
    Tel: (315) 492-4700
    Fax: (315) 238-5200
    Email: dkelly@tullylegal.com